GREMILLION, Judge,
concurring.
|, The majority finds manifest error in the jury’s verdict and assesses the casino 100% fault. Otherwise, the majority makes no changes to the total amount of the verdict. I agree with these portions of the opinion.
There really was no evidence supporting any negligence on the part of the plaintiff. Even the defense expert could only speculate that she might have or could have contributed to the fall. The lack of evidence in the record requires us to place all of the fault on the defendant.
I concur because I believe the issue of whether Louisiana Code of Evidence article 510 was violated, and the effect of this violation, needs exploration and explanation. Initially, I will state my unequivocal agreement with the majority that any violation that may have occurred resulted in no prejudice to the plaintiff. Plaintiff could not possibly have expected that Dr. Gargas would not have been exhaustively *1031 cross-examined on the medical records that were sent to him. Sooner or later, those records were going to find their way into Dr. Gargas’s hands.
Article 510 takes, then gives, then takes again. Paragraph (B)(1) clearly takes away a defense attorney’s right to communicate with a plaintiffs health care provider, and vice versa. The patient has a privilege to refuse to disclose, and to refuse another person to disclose, confidential communications between himself and his health care provider. Another person would include the casino’s attorney.
| ^However, Paragraph (b)(2)(A) states that there is no privilege when the communication relates to the health condition of a personal injury or workers’ compensation claimant. Finally, Paragraph (E), entitled “Waiver,” provides that the exceptions in Paragraph (B)(2) only apply to trial testimony or a discovery method authorized by La.Code Civ.P. arts. 1421, et seq. Ultimately, what this “waiver” does is clearly allow the defense attorney to communicate with the plaintiffs health care provider, but only through proper means of discovery.
In this case, the defense attorney’s employee communicated with the plaintiffs health care provider by providing other medical records to the doctor to prepare him for his deposition the next day. Thus, there are actually two technical violations of Article 510. First, the communication with this particular health care provider did not take place within a deposition or a trial. Secondly, the communication included other health care records for which the plaintiff also had a privilege.
I call this a “technical” violation to demonstrate how minor I really think it was. Yes, the attorney’s employee should not have engaged in that communication, and Dr. Gargas should not have received the medical records from the defense attorney outside the deposition. However, the records were only being provided for the purpose of preparing for the deposition during which the communication between the doctor and the defense attorney and the presentation of those very same medical records would have been absolutely appropriate. The “violation” resulted only in the doctor being made aware of information a few hours earlier than would have been technically proper, and only for the purpose of being better prepared to participate in the proper deposition.
Ms. Labarrera suggests that all of this resulted in a large amount of unfair surprise. I completely disagree. Again, she had to anticipate that Dr. Gargas |swould be asked to discuss these very medical records at his deposition. To strike Dr. Gargas’s deposition would, in my opinion, subvert justice by concealing from the jury evidence that is completely relevant to the case and that was otherwise fairly obtained.